Rifle Pistol Clubs v. John Sweeney NJ Rifle Pistol Clubs v. John Sweeney NJ Rifle Pistol Clubs So I hope you'll forgive me if I jump right in and take you to what I think is one of the central points and is a serious point of contention here, and that is, are we as a panel today bound by the decision of the panel that decided the preliminary injunction appeal? And on that point, you know, it's briefed, you've talked about it, but I want to ask you specifically to address then-Judge Alito's comments in the Pitt News case. It's raised in the answering brief at page two. You know what it says. You didn't respond to or address that case in your reply brief. I want to give you the chance to do that now. Since it seems pretty clear that the court in the PI appeal went beyond applying the preliminary injunction factors and just asking whether or not there was a likelihood of success and addressed the merits. So I've got two questions for you. One, is that in fact the case that they addressed the merits? And two, if it is the case that they addressed the merits, why doesn't Pitt News put you in a position where, you know, this case is effectively over? Thank you for the opportunity, and I'll jump right into that. This panel is not bound by our panel's opinion. Yes, it was apparent from the face of our panel's opinion that they went on to address the merits. However, that case rose in a different procedural posture. And in that case, inferences were drawn in favor of the defendants because review was held of the judge's denial of the preliminary injunction. Under those circumstances, that court was bound to take inferences against the plaintiffs and in favor of the defendants. And in fact, they did so. That's a way of saying you think they got it wrong. I'm trying to get you to address the Pitt News statement from Judge Alito, which is, absent extraordinary circumstances, if a PI panel addresses the merits, it's like any other panel decision and a later panel is bound. How do you propose we deal with that? Well, first and foremost, all the case doctrine is discretionary. It has several exceptions to it. Not the least among them are when the prior panel has committed clear error and it would manifest injustice to adhere to the prior panel's decision. Here we have, as in the case of the City of Philadelphia litigation we cited in the court, an example where the prior panel did not adhere to a controlling Supreme Court decision. Hold on just a second. Mr. Sweeney, when you say they didn't adhere to it, the other folks from the Attorney General of New Jersey's office say, hey, there's at least four other circuits that looked at this, the D.C., the 2nd, the 4th, and the 7th. They all said that restrictions on large capacity magazines were not a violation of the Second Amendment. So how could you, Third Circuit, say that a decision of your own court that said the same thing is so far gone that it's clearly erroneous and a manifest injustice? That's an argument you need to meet. They say there's a consensus of the courts that have addressed this and you're asking us, you, the New Jersey Rifle Club, to say that that whole consensus is not just wrong but wildly and clearly wrong and manifestly unjust. What's your response to that argument? Can I add a factor to that, too? I believe yesterday the Supreme Court refused cert in the sister cases, correct? That is correct, Your Honor. And what significance does that have in the answer you're about to give? No, the Supreme Court has clearly said that no offense is to be drawn from its file of certiorari. All it means is that we will have to wait longer before there is further guidance from the Supreme Court, which is all the more reason for the circuit courts to look closely at what they've been doing. No less than four justices of the Supreme Court have weighed in on this approval of the standards that have been employed in the circuit courts in the Second Amendment cases. And getting back to the original question, the fallacy of democracy does not demand this court follow the opinion of other circuit courts. Yeah, I understand. Rejecting consensus does not mean they are correct. Right. I'm with you, Mr. Sweeney, but you've got to admit that if you're going to say something's clearly erroneous and manifestly unjust, you ought to be in a position to say, well, the fact that there are four other circuits that say it, you know, might weigh against you, and address why, how is it that they're all wrong, and not just wrong, but so wrong that we could say clearly erroneous, manifestly unjust. That's the point I'm trying to get you to address. Here we have a law which the state has the duty to defend and has the burden to defend it. It hasn't carried its burden. It had the benefit of differential from the procedural posture of that case. It's now on summary judgment, which was not the procedural posture the first time, and the defendants have to carry their burden. All they want to say is, well, we got lucky the first time. The panel went on and reached the merits, and therefore, we don't have to defend the benefits. That's not the law. They have an obligation to come forward and demonstrate that the law is, in fact, constitutional. The record's clear. The banned magazines are in the second section. The first panel ruled that. The first panel also ruled that the record showed that there were a million magazines owned by law-abiding citizens for lawful purposes, and that there's no long-standing history of regulation. Under these circumstances, these arms are protected. This court has never addressed a ban of protected arms. This is the first case, and it should not be relied upon a patented motion for preliminary injunction. Well, I think we all understand your argument and, indeed, your frustration, perhaps, that the first panel went and decided this on the merits, but it did decide it on the merits, and you've acknowledged that. Taking that as a given, that it did address it on the merits, what, if anything, can you point to that would say that the factual foundation, because you've said a couple times that the state didn't carry its burden of proof. Is there something in particular in the earlier opinion that you can point to where you can say, look, that's the panel stepped someplace where it should not have, that the procedural posture actually makes a difference in terms of factual record is what I'm asking. Absolutely. And we have at least two instances where you can look at what the prior panel did. One of them was when it determined the amount of burden and determined there was no burden on the exercise of the right. How did the determination careful of the panel's decision? They discredited the evidence that these firearms with magazine standard capacity are useful in self-defense and, in some circumstances, are required for self-defense. Evidence that the state's own witnesses, in part, contributed to. That evidence was simply ignored by the panel. They drew inferences against the panel, and because of this, they selected intermediate scrutiny. But they then went on to rely on a thunder threat of evidence. Few anecdotal situations in which it was said that a pause in recoding of a bystander's intervening victim to escape. But the evidence also showed that there were, at most, three such incidents. And when they were themselves examined, they were examined, there were not situations in where bystanders were allowed to intervene. They were, in fact, situations where firearms were changed, the magazine proved to be defective and had to be discarded, and another situation in which one individual was reloading a shotgun with individual rounds. And these are not compelling evidence. Mr. Sweeney, was the earlier regulation on LCMs unlawful? The New Jersey law that limited clips to 15 rounds. Was that a Second Amendment violation in your view? In my personal view, yes it is. That's not before this court now, and that's not the issue in this case. The issue in this case is 10 constitutional limits, and it's clear that it's not. There may be a number where it can be constitutionally. Yeah, when you say that's not the issue before the court, the question that is before the court is, is there a restriction on magazine size that would be constitutional? And is your position that there could be no such limit? There's no such thing as an appropriate limit. No, I didn't say that at all. My position is there may well be a limit above which it could be banned, but that certainly is not 10, nor do I think it's 15, or that issue is not before this court. All right. If it's certainly not the case, then we wouldn't be here, right? Because then everybody would agree on it. So it's clearly open to dispute, because we're disputing it right now. Now, having taken it that it's open to dispute, is it in fact the case that under this court's Mozzarella decision that the proper approach to take here is to say, okay, there could be some limit, and so the question is a means approach that looks, using intermediate scrutiny, to say does this particular limit fit a legitimate state interest? First of all, Mozzarella involved firearms that had serial numbers obliterated from them, but the Mozzarella court made clear the firearms that were still admitted, firearms with serial numbers, were in no way defensively less functional than the firearms with the obliterated serial numbers. The obliteration of the serial numbers served no lawful purpose. Those were not protected arms there. That's what intermediate scrutiny provides. And this strict scrutiny should be applied because these are admittedly protected arms. A ban of protected arms requires scrutiny. And if you do go to intermediate scrutiny, that requires a rigorous, rigorous scrutiny of government evidence. Not, as the prior panel said, a diluted deferential scrutiny. Citing the Tenth Circuit case in Bonnetty that to the risk of firearms, this is not a rigorous scrutiny that would apply in the First Amendment context, for instance. Okay. That is inappropriate. Okay. So, Nadia or Seth Ross? I have no further questions. Nothing for me, thank you. All right. Well, we'll have you back on rebuttal, Mr. Sweeney. We gave you a little extra time there. Thank you, Your Honor. I appreciate that. Thanks. Mr. Fanneroth, the floor is yours. Thank you, Your Honor. Good afternoon, and may it please the Court. The question before you today is straightforward. Should a prior panel's presidential decision that reached the merits of the complaint receive deference by a subsequent panel considering the same issues? The answer to that question, which is provided by this Court's own decisions, as well as its internal operating procedures, is yes. As Your Honor noted, Judge Alito commented in the Pitt News case that when a panel does not stop at the question of likelihood of success and instead addresses the merits, the latter panel should regard itself as bound by the prior panel's decision. And I would just want to mention, Your Honor, that Pitt News is particularly on point because in that case you had a situation where a First Amendment challenge was raised, a decision with regard to a preliminary injunction issued, but as Judge Alito noted in his opinion, in the first Pitt News case, that prior panel stopped once it determined that there was no likelihood of success on the merits. That is, it did not reach the merits of that decision. And he went on... Well, hold on, Mr. Fanoff, because there's a feature here that I want you to address that may not have been in play in Pitt News, and that is the prior panel seemed to make quite a bit of the assertion that large capacity magazines, something over 10, were a feature in mass shootings and that was a legitimate concern for the State and they should be able to take that into account, etc., etc. But didn't that panel go past where the District Court was? The District Courts, in fact, seemed to specifically say, I'm not buying this expert testimony stuff and I'm not accepting that. The District Court ended up where the panel did, but the panel, it looks like on that point, was out there making up or finding its own facts. Are they allowed to do that? Can they just say, yeah, who cares what the District Court found? We think this is going to be important in limiting mass shootings. Right. So, Your Honor, a couple points on that question and thank you for it. First, I think the characterization of what the District Court did or did not credit in terms of the evidence was addressed by the prior panel and there's been these characterizations by the appellants that this information was deemed not credible or didn't assist in Judge Sheridan's decision and the panel addressed that in its opinion to clarify the record on it. Yeah, you tell me where because when I look at Judge Sheridan's statement, and this is not a characterization by the other side, he said the expert testimony was of little help in its analysis. I mean, that's a quote. That sure looks to me like a statement by the District Court that it wasn't accepting that argument and yet the prior panel leans on it and leans on it pretty hard. Right. And, Your Honor, if you look at, for example, in footnote 24 of the panel's decision that discusses the fact that one of the arguments that's been raised is the level of information or evidence that needs to be connected, you know, that they said it needed to be a causal connection as opposed to the reasonable fit. There's some discussion there and then there's also some discussion in the lengthy footnote 28 with regard to the inferences that are properly drawn and also with regard to legislative facts which the appellants had criticized. I believe that the panel, and I'm just, forgive me, in the court's decision, it can be tricky as I'm talking, addressed the question of whether it thought the legislative fact argument that the appellants had raised was compelling and found that it didn't and there's also some discussion in footnotes 6 and 7 with regard to rebutting some of the testimony that was provided in the district court and then also in footnote 9 an observation by the district court with regard to the mass shootings. In addition, Your Honor, obviously the prior panel had the entire record before it and so it was within its rights to examine the entire record and as we noted in our brief as well, it was something... Wait, wait, wait, wait, wait. Are you suggesting to me that on a preliminary injunction review, if the district court rejects something, that the appellate court is entitled without any determination that there was clear error, is entitled to say, you know what, we know you rejected that district court, Judge, but we're looking at it and we can do what we want with that and we can accept it as fact. That that's staying inside the appellate court's lane? What I'm saying, Your Honor, is that with regard to the record that was before the prior panel, it was permitted to examine that entire record. That's not answering my question, though. What I'm trying to get at, and this is a significant issue, I think, if the court accepted something which the district court rejected, that's more than just looking at the record. That seems to be taking a factual foundation which the district court explicitly said shouldn't be a factual foundation. Isn't that a problem that creates an issue when it comes to the question of do we defer or not defer? That's my question to you. Right, and, Brenner, again, forgive me because as you're talking and I'm taking in your question, I was trying to find an opinion and I'm being unsuccessful because I'm trying to do a couple things at the same time where there's some discussion as to how the evidence before the district court was accepted and what wasn't accepted. But, again, I think what the prior panel elucidated in its opinion was the fact that it had the full record before it and as the district court did and the idea that there was something other than just the couple of references in the district court decision that could be considered was not so. That is, that it had the entire record as to the district court in terms of making its determinations. And, ultimately, Your Honor, what the prior panel did was took that record and, again, at the appellant's urging, I should say, as Richard mentioned and we mentioned in the brief, in terms of getting to the merits of the decision, went ahead and did so. They don't even dispute that. Everybody agrees that the prior panel decided this thing on the merits. The question now is did they do it properly? And one of the questions that's hit by the dissent is that this thing should have been a subject to strict scrutiny. So you've heard Mr. Sweeney's argument. This, they say, burdens a core aspect of the Second Amendment that this is not a long, you know, restriction on magazines is not a long-standing, recognized kind of restriction of the sort Heller speaks of. So why was the panel right and Judge Bibas wrong when they said, hey, this is a core right. It's strict scrutiny, not intermediate. Okay. Judge Jordan, is it? Your Honor, forgive me. It's reported at page 113 of the prior panel's decision where it talks about, specifically, the court stated that although it had found Kleck and Allen, who are two of the experts, credible, their testimony relied upon questionable data and conflicting studies suggesting that both of the experts' methodologies and conclusions were flawed. The court, however, considered other evidence in the record to reach its conclusions and then insights to several passages within the district court's decision in ultimately determining that the law was constitutional. I just, I wanted to get that out there because, again, I've been looking for it. With regard to your question, you know, as we have noted, no court at the circuit court of appeals level has ever looked at a large-capacity magazine restriction under strict scrutiny that other circuit courts of appeals have held. This idea that restricting a magazine size is a total ban is simply inaccurate. As was noted in the prior panel's decision and by other courts, this did not... Judge Steeves didn't say it was a total ban. He indicated it's a burden on a fundamental right. And I think, you know, I don't want to put words in his mouth, but I took it based on what he said, that that ought to lead us to strict scrutiny. That's a position, an incorrect one, if you're burdening a fundamental right. Because under, again, Your Honor, under Marzarella and the prior panel touched on this, this is third circuit law. There's this two-step process in terms of determining first whether or not there's a burden. And then if you do determine that there is a burden on the Second Amendment right, you determine how significant a burden it is. And the prior... This is Judge Maney, and I want to just ask if you can answer a question on the point you just made. You mentioned the two-step Marzarella test. Did the prior panel engage in both prongs of that test? It did. And it held, and as other circuit courts of appeals have held, you know, the prior panel said that they're going to assume without deciding that LCMs are typically possessed by... Well, hold on. You hit the nail on the head, right? So if it's assuming without deciding it, then I would assume that you would agree that's not a holding as to prong one of Marzarella. It's an assumption that they engaged in in order to proceed to the analysis of step two. But do you consider that a holding on point one or not? I mean, I do think that's what the Third Circuit and other circuit courts of appeals have done. Fair enough. But it matters, right, for the law of the case discussion that we just had as well. So does the state consider that issue resolved such that the state would no longer take the position that magazines are not entitled to Second Amendment protection? Right. So I want to be careful in terms of the... how I would characterize our position because, you know, certainly there's, you know, at least one circuit court of appeals, the Seventh Circuit, that took an entirely different sort of analytical framework for the purposes of looking at large capacity magazines. We have certainly argued that, for example, large capacity magazines have been subject to longstanding regulations. That argument was rejected by the prior panel, although the Colby Court and the Fourth Circuit did recognize that. For the purposes of why we are here today, I think if you assume for the purposes of the two-step analysis under Marsarella that magazines are protected and there is a burden that is placed on them when laws of this nature are passed, again, you still fall within the bucket that these other circuit courts of appeals and, as your colleague had noted just yesterday, the Supreme Court rejected the fourth time it's rejected a challenge to... Right, right. And I think we got that point, Counsel, but I'm hearing some... and I do understand the difficulty of the question, but I think it does matter. If you would... If you take the position that there is no binding holding of this court as to whether magazines enjoy Second Amendment protection under Marsarella, then I'm... I do have to ask how it is that we've reached the merits of the decision in the prior case. And, you know, we talked rightfully about Pitt News and the statement that Judge Alito made regarding how the law of the case doctrine might apply had a panel reached the underlying issue, which, of course, it didn't in that case. But, you know, he said other things about this subject as well. In United Artists, he made the point that you don't get two bites at the apple, right? You only get one. And so if the prior panel hasn't looked at the issue, well, then, there is no law of the case issue at all. It still remains open. So I'm just trying to square what I think your position is that, one, the prior panel definitively resolved the purposes of law of the case but then leaving open the opportunity to still argue that there might not be Second Amendment  at all in this circuit. Can you help me sort of square that a bit? Sure. And, I mean, I think that you would be hard-pressed to find language more definitive than the language that was used by the prior panel not only at the beginning of the of its opinion where, you know, it conclusively says that it does not find that, you know,  827-61 violates the Second, Fifth, or Fourteenth Amendments. They said that the appellant's arguments failed as a matter of law. I understand your point, Judge Mabey, and I would certainly respect the fact that you might want to read into the assumption without deciding this is typically possessed for lawful purposes. Maybe you see that as opening even a tiny window, but the affirmative and exhaustive analysis that the prior panel then went through going through that second step of Marsarella to identify the governmental interest, to identify the reasonable fit, and then to determine whether or not it imposed more burden than necessary on the Second Amendment right clearly indicates that the panel went there, so to speak. They went to the merits of whether or not this law is constitutional or not, and the answer to that was in the affirmative. And so I think, again, in Drake as well, where there's a question as to whether or not the justifiable need standard for concealed carry permits was a longstanding tradition or not, the court could have stopped and ended its opinion holding that it was a longstanding regulation, but it didn't do that. It actually went and went through the two-step process in Marsarella to uphold New Jersey's justifiable need law separately under that analysis. So I don't want to be glib in saying it's a distinction without a difference, but I think what the panel's decision here clearly indicates is that it intended to reach the merits, it examined the law, and it reached the merits and held that the law was constitutional, which then provides for the binding effect under Pit News, under Menard Oil, and under Mukasey, which I would just note sort of as an aside, that case and the Philadelphia litigation case, which are basically the only two cases that the opponents rely on, ultimately conformed with the Third Circuit's practices. That is, in Mukasey, there were two determinations that a prior panel had made with regard to First Amendment vagueness and First Amendment overbreath, that the subsequent panel, which is the panel that the opponents rely on, determined it was bound by. So the case actually cuts against the opponents, and in the Philadelphia litigation matter, you had a court that found that there was no clear error, and there would not be a manifest injustice if this panel thought that the level of scrutiny applied was just as a legal matter, incorrect, wrong. I mean, is it manifestly unjust to have a case decided on an erroneous legal basis if we were to think it was an erroneous case, or is it manifest injustice? So with regard to whether it is clear error or not, again, the Third Circuit's corpus of case law that begins with Marzarella in 2010 is clear in terms of the analytical framework and intermediate scrutiny is appropriate here. Even in Marzarella, Mr. Fanoff, didn't the court assume the first step? Just say, yeah, look, even if there's a protected right here, we're going to go on and say that what happened is subject to intermediate scrutiny. In the er case that you referred to, there was an assumption in step one, wasn't there? Right. But the assumption, I would say, Your Honor, cuts in the appellant's favor. They would want to get to the point that the restriction of this sort should be interpreted under strict scrutiny. I think it would be difficult to say clear error was made by the prior panel by using intermediate scrutiny, but even if you did, under the Philadelphia litigation case, that panel also said that even in that case, that is the Philadelphia litigation case, which had to do with some testimony by then Mayor Good, they would also have to determine separately that a manifest injustice would occur if they didn't overturn that prior decision. And so what you would then have to do is say that there is a manifest injustice by the prior panel applying the same level of scrutiny that every other circuit court of appeals that has looked at an LCM law has utilized. And that itself would be well outside what is the scope of the case. And again, the Supreme Court having denied cert in four different cases that used the intermediate scrutiny standard for interpreting a large-capacity magazine restriction. Okay, thanks. Judge Mady or Judge Roth, anything further for Mr. Faneroff? Nothing at this point. I mentioned an LCM restriction. What is a large-capacity magazine both for purposes of your position and how the prior panel interpreted it? So the state of New Jersey defines a large-capacity magazine as a magazine that holds more than 10 rounds except in Of course, I understand that. But you're referring to states across hold on, if we're going to start with that, let me finish the question. If you're referring to large-capacity magazines to mean things that are not the law in New Jersey and the prior panel is using that language as well, what exactly is the question of regulating capacity? Right. So the prior panel had before the law of the state of New Jersey which defines a large-capacity magazine as more than 10 rounds. Obviously, that is not the standard in all 50 states. But one of the things that we discussed in our brief and that we discussed   central role of representative democracy allows for experimentation in the Second Amendment realm. And in the Friedman case, there's a discussion about how the central role of representative democracy is no less a part of the Constitution than the Second Amendment where there don't have restrictions at all. But the question before the panel was whether or not New Jersey's law, which restricts the magazine size to 10 rounds, conforms with the Second Amendment, and it ultimately held that it did. I appreciate the laboratories and experimentation point, and it is certainly well stated. I am still  confused, though, by the facts that are actually being presented to this court because it seems as though in the proceedings below, in the prior panel's opinion and in the argument today, the small CM or the large capacity magazine is used interchangeably to refer to both New Jersey's 10-round restriction, the prior 15-round restriction, and restrictions that have been passed by other states in varying amounts. And I'm trying to think of an analogous situation where regulation could be that fluid and still be looked upon as meeting a certain constitutional standard, but if there's anything you can think of that would help me in that situation, otherwise I'll have no further questions.  refer you to my prior answer, Your Honor. Okay. Thanks, Mr. Fanneroff. Mr. Sweeney, you're about, sir. Thank you, Your Honor. Very quickly, a standard magazine is a magazine in common use. Magazines in common use, handwritten run-ups of 19, there's one on 20, certainly not much above that. We're not talking 50-round drums or 100-round drums. They're not in common use. So not that there's no upper limit, there's not, there's standard. You look to see what law-abiding citizens use for lawful purposes. And that is the upper constitutional boundary. Turning briefly back to Pitt News, that case said that the preliminary injunction appeal presented a court in all field of law and the facts are established or no component relevance. And I think this court's panel took upon itself to pick evidence from the record that were not relied upon by the district court judge coming to its conclusion. And you can see that clearly on pages 18 and 20 of 19 and 20 of the reporter's opinion. What went outside was in the judge's opinion. And it is worthwhile to look at some of the evidence that the judge had in his opinion. The New Jersey attorney general's office explained that standard capacity magazines were limited to only 10 rounds because gunfights are highly stressful and unpredictable. Law enforcement officers go through rounds quickly. They admit that ordinary citizens have a lower hit rate than law enforcement officers and citizens are less likely to have an extra magazine handy. That evidence was completely disregarded by first court. That takes us into the serious issue once again Mr. Sweeney of what is clearly not the case at the moment. The responses that we got from Mr. Fanneroff with respect to legislative facts and things like that and the assertion that the court on review is entitled to look at the entire record and that they did that even if they stepped over the line in a place or here. They're entitled to look at the whole record. Do you agree or disagree with that and if you don't agree with it explain to us how even if the prior panel misstepped at a certain point how that amounts to something that we could call clear error and that the court must accept all of the undisputed material facts in the case. That's clearly not the statement that was applied by the first panel. Accepted rejected evidence. It deems no evidence less credible than other evidence. You cannot do that on summary judgment. That sounds Mr. Sweeney like you're arguing in the teeth of pit news. It sounds to me like what you're saying is hey we're in a different posture now so you can ignore what the earlier panel said even though they decided it's on the merits. But that isn't what pit news says. Pit news says in exactly these circumstances, a PI panel dealing with a different standard of review and then a merits panel looking at the PI panel's case. And our precedent, binding precedent pit news says that panel opinion that came earlier, you got to pay attention to it and you're bound by it, absence, clear error and manifest injustice. And so I might be losing the thread of your argument in which case I apologize but I'm not sure how falling back on the summary judgment standard helps you in these circumstances because we're dealing with pit news. Precisely because pit news said that the acts are established and are of net controlling relevance. If you look at the case cited in there, Aldonado v. Houston, 157, F3rd, 179, you see a situation which is entirely different. Here, the panel looked at facts. The facts are complicated. The facts are difficult to understand and they're important. You cannot sit as with the case pit news that the facts are established and are of net controlling relevance. You cannot sit as  case pit news that the facts are difficult to understand  important. You cannot sit as with the case pit news that the facts are complicated. You cannot sit as with the case pit news that the facts are difficult  and are of net  relevance. You cannot sit as    that the facts are of net controlling relevance. You cannot sit as with the case pit news that the facts are difficult. You cannot